Good morning, Your Honors. David Zugman. I'll be arguing the cause on behalf of Appellant Sluder and Saturday. Counsel Leff will be arguing the cause on behalf of Mr. Treadwell. I will go for about 10 or 12 minutes, and then Ms. Leff will do the remainder, and we will attempt to save some time for rebuttal. Your Honors, this is an enormously difficult case for me. I came into this case after the trial had been done, and I did the sentencing. In my 12 years of federal practice, the 188-month sentence handed down by the District Court on Mr. Sluder exceeds the longest sentence that a client that I've represented has ever received by over five years. And we know why the sentence was what it was. It was because of the judicially found facts regarding the guideline range and, most specifically, the loss calculation. And that is going to be the focus of my argument. The loss calculation as well as the as-applies constitutional challenge. As Your Honors know, I brought four issues. The first being the punitive misinstruction of the jury. Now, I recognized in my briefs, I've been clear from the beginning, that this Court's case law currently says that there is no requirement that a defendant intend to cause any financial harm or ruin on a person in order to be convicted of wire fraud. I concede that. So then why are you arguing that issue? Do you want us to break the Ninth Circuit Court rules? I don't want you to break the Ninth Circuit Court rules. I do want the Court to reconsider the rule in light of the analysis of the four other circuits. And I think it's quite possible. You can't do that, Counsel. Counsel, it's Judge Gould. Counsel, Judge Gould with a question. Isn't that an issue that you just want to preserve so you can present it in a petition for rehearing in bank? You can certainly do that. Yes. But our panel, as I understand our rules, our panel cannot disregard or we have to follow a prior precedent. Correct, Your Honor. You know, if you distinguish it and say it doesn't apply, that's fair argument. But I think it's a waste of your time to tell us it's a mistake and we should scrap it because we're not going to do that. The most you could do would be argue that in your petition for rehearing in bank. And if you persuaded us, you know, we could join your petition by asking the in-bank court to convene. There are two reasons. I'm not asking Your Honors to overrule that case right now. The reason I brought that issue is because, of course, there are several cases before the Supreme Court where they might adopt the approach of those courts. And I would have preserved that issue should the Supreme Court rule that way. And the second reason was I think it's very important to point out that the mens rea attached to Mr. Sluder and Mr. Saturday, the jury did not find that they intended to cause harm. And, indeed, the trial defense that they presented was that we believed in Mr. Treadwell and Mr. Acosta and we believed in the validity and propriety of the programs that we pitched. Now, I understand the government's position is, look, they said false things. They got people to part with their money. That's all we need to prove. And I understand that. But when we come to the determination of loss, the most important single issue driving the sentencing calculation, a 22-level increase, the calculation of loss is determined by the jointly undertaken criminal activity. In other words, it is my position that the district court misapplied the loss guideline because it simply took the view that once you had a fraud, you just look at the total amount of money that came in and was lost, and that's how you determine the loss. And that is not what 1B1.3 says. Did he misapply it or did he misinterpret it? Because it seems like his application of it was consistent with what you argue the law is, that his statements on the record seem to be inconsistent with what you say the law is. That's correct, Your Honor. I think that the law is very clear under 1B1.3 that you need to determine the scope of an individual's criminal agreement and that the criminal liability that a person may have under the statute is not of the same extension as the guideline liability. That is in the application note. So it is not the case that simply you say, okay, you were convicted, how much was the total loss? The district court is required to make an individualized finding about the participation of these individuals, which is why the initial issue of the defendant's mens rea is so important. And it's also uncontested in this case, uncontested, that Mr. Sluder and Mr. Saturday received a fraction of what Mr. Acosta and Mr. Treadwell received. Mr. Sluder received something of the order of $200,000. Counsel, I have a question for you. Yes. As to Mr. Sluder, if he was at the right hand of Treadwell from the get-go, I don't know if that's totally accurate, but if he was sort of a right-hand man, and if the law of the circuit requires us to permit a conviction even without intent to cause pecuniary harm, then if those things are true, then why, as a person who was there from the beginning until the end, why isn't he responsible for the full amount of the loss? In other words, what other finding does the district court have to make on that? I quote the guideline. The principles and limits of sentencing accountability under this guideline, 1B1.3, are not always the same as the principles and limits of criminal liability. That means that you can be convicted of a fraud case which involves an enormous amount of money lost, but your particular participation might be much, much less. This court confronted a similar set of facts in United States v. Zolt, the stock manipulation case, where the original calculation was just to use the entire figure of the stock's worth instead of comparing its market value against its inflated value because it's not the same thing to say, look, there was $40 million lost, that's all I need to do. There would be no reason to ever address 1B1.3 if the simple determination of loss was, well, let's just total up the numbers. You have this number in this column and how much came out, and that's your total loss. It does not work that way. How does it work according to you? You have to determine the scope of the individual's agreement, and this is what I urge to the district court, that you have to decide was Mr. Sluder, was Mr. Saturday participants in, you know, each deal as it were. And the district court's not required to go through the record and make an individualized determination as to each deal, but it is required to make an estimate, a reasonable estimate of what their participation was. And if the district court had gone through and said, look, I'm going to look at their participation and their participation really was the $40 million, this would be a different argument. I would be making a clear error argument that that calculation was wrong. But that wasn't the district court's analysis. The district court's analysis was let me look at the total figure. You came into the conspiracy at, you know, its inception. This is how much the loss was, therefore you're responsible for the whole loss. That's clearly wrong. That is just clearly wrong under Zolt and under the clear language of the guideline. Now, you can have it. Okay, counsel, counsel, I'm still back on my question. If Mr. Sluter was there from day one until the end and he was helping Mr. Treadwell take money from people and they have a consequent loss of X, then why would he not be responsible for that full consequent loss if he was there the whole time? You know, even if he says, like, I didn't really intend for them to lose money. That wasn't the district court's finding, though. The district court's finding was that you're responsible because you were there from day one. Mr. Sluter, and the district court, in fact, implicitly found against that under the 3553 factors where it imposed a sentence beneath the guidelines. It found that they didn't have the same level of culpability. They didn't have the same level of participation. So, I mean, it is true that the district court gave back a little bit under the 3553 factors, but that doesn't get the district court out of the guideline calculation error. The first step in this process is to correctly compute the guidelines. It is not to incorrectly compute the guidelines and then remedy that by doing a 3553 analysis. Where I'm hung up is, Stan, and I'll let you make your argument, but where I'm hung up is on the guidelines part as to how someone could not be responsible for the full loss if they were in the conspiracy for the whole way. We often have cases where people come in and out of conspiracies and they're involved in some transactions but not others. But if Sluder is really involved throughout, I'm having trouble seeing how you would parse him as being responsible for a lesser amount. And I realize that the findings aren't really maybe clear on this, but the guidelines would say what is the loss attributable to his conduct, correct? Not to the intended. Go ahead. I must disagree, and I quote the guidelines. Because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of criminal activity jointly undertaken by the defendant, the jointly undertaking criminal activity, quoted, is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant. Now, were your honors positioned that you just need to look dollars in, dollars out, this guideline would be eviscerated. It would be meaningless because Mr. Sluder, if you just look at how much money he got versus how much Treadwell got versus how much Acosta got, it is very clear that they didn't have the same level of participation. It wasn't the case that Mr. Sluder... No, the same level of profit, but they may have had the same level of participation. There may have been people who did less important tasks for the whole period of time and therefore were rewarded by the thieves with less money. Your Honor, I think that's a finding for the district court to make in the first instance. I'm not saying... They found that Sluder's agreement wasn't for the entire conspiracy. The district court began by quoting, look, my understanding of the law is he was there from day one. He's responsible for the entire loss. It wasn't I'm making an individualized determination that Mr. Sluder's participation was of this order of magnitude. It was you're there from the beginning. You get the whole loss. That's wrong. I'd like to briefly turn to the Rita issue. I've been banging my head against the wall with this court trying to get your Honors to issue a ruling on the as-applied challenge. It's an interesting and different challenge than the Booker challenge. The Booker challenge says the district court calculates the guidelines in the first instance and that offends the Sixth Amendment. That is not this argument. This argument does not depend on the district court's findings. What it says is when this court engages in substantive reasonableness review, all it does is it looks at the computed guideline range and compares the sentence. The substantive part of substantive reasonableness review is to use the judicially found facts to determine the lawfulness of the sentence. The jury's verdict, the unadorned jury's verdict, authorized a guideline range of one to seven months. If your Honors looked at the one to seven months and saw the sentences, they'd need a pretty good justification to justify 188 months or 63 months. However, if you compare it versus the judicially enhanced guideline range, then all of a sudden it's a beneath-the-guideline sentence and probably presumptively reasonable. That means that these judicial findings are determining the lawfulness of the sentence. That is the Sixth Amendment problem posited by Justice Scalia in his read of concurrence. I don't see how you could engage in substantive reasonableness review without looking at the guideline range. And to the extent that depends on Sixth Amendment facts found in violation of the Sixth Amendment, it's unconstitutional. I must turn over to you. Counsel, Counsel, I might be missing something. But I thought that in Booker the Supreme Court said that judicial fact-finding would be fine as long as the guidelines were advisory. As long as they were truly advisory. And disregarding them had no legal consequence. But on substantive reasonableness review, the guideline fact-finding has legal consequence. It determines the lawfulness of the sentence. That's the only thing Your Honors compare. Your Honors, you know, don't review the sentencing transcripts. You haven't seen Mr. Sluder or Mr. Saturday or Mr. Treadwell. The only thing you have to compare their sentences to is the guideline range. And if you need to look at the judicial facts to affirm, the judicially found facts to affirm the sentence, that violates the Sixth Amendment. I must turn it over to you. Is there any precedent? Is there any circuit court precedent? I've been trying. From our circuit? Any circuit in the country. Any of the circuits that have so held. No. There's one circuit court that has rejected the argument in the Seventh Circuit in a terrorism case. But I will 28-J the court case if the court so wishes. But other than that, I brought the issue up, of course, several times, but I have yet to get a ruling on it. Thank you, Your Honors. Okay. Thanks. Good morning. May it please the court. My name is Catherine Dixon-Left, and I represent Randall Treadwell. Randall Treadwell is 51 years old. He's the father of five, and he has a high school education, and he has been a salesman all of his life. He's the son of a preacher, and he has low average intelligence, and he has certainly the gift of gab. He was sentenced to 300 months in custody, as Mr. Zuckman has pointed out, almost entirely due to the sentencing guidelines and the fraud loss table and the upward adjustment of 22 levels. In addition to that, I wanted to just talk about in my brief time before Your Honors about two issues. The first one I wanted to talk about is the issue of the upward adjustment for misrepresentation of a charitable organization. I know it's just a drop in the bucket, but nonetheless, it is still important that the guidelines were not appropriately calculated. The charitable organization upward adjustment under Guidelines Section 2B1.1B8A authorizes an upward adjustment for misrepresentation that the defendant was acting on behalf of a charitable organization. Mr. Treadwell did no such thing. Mr. Treadwell's investment scheme, if you will, was all put together with the idea that everybody who invested in it would make money, and Mr. Treadwell at no time represented that he, in fact, this was a charitable organization. Mr. Kerr didn't find that. He found that Treadwell was responsible for Sluder's statements to investors that, quote, some of the programs that were involved in a certain percentage of the returns that we do gain from these projects do have to be returned into humanitarian needs. What was wrong with that determination? Why wasn't Treadwell responsible for Sluder's statements? I don't think Mr. Sluder's statements qualify as misrepresentation, that he represents a charitable organization. A charitable organization? Well, he didn't say that LWI or any of the other names of the organization were, in fact, charitable. They never represented to anyone that they were going to have any kind of tax benefit. What Mr. Sluder did say on two occasions, and we're talking two occasions over hours, hours of taped conversations where they're making sales pitches over the phone. In these hours, there are two brief comments by Mr. Sluder, where he says that some of the investments require that some of the money be put into charitable causes. To be able to see people that are hungry and are in various needs throughout the world, that sounds pretty charitable to me. It does, it does. And I think that on those two occasions that, in fact, he was appealing to the potential investors' charitable impulses. That said, that is a wholly different thing than saying, I work for a charitable organization. I collect for the Red Cross. I collect for the Boy Scouts. He wasn't appealing to the investors for them to go out and give to charity. He was saying that the money that they were making was going to go to humanitarian needs. He was representing that he would spend money on the poor and the hungry. All right. I think we know what the situation there is. You may want to go to some other issues. In any event, the guidelines specifically say that the upward adjustment is appropriate only where there is, quote, a misrepresentation that the defendant was acting on behalf of a charitable organization. Yeah. And here, he was not a charitable organization. I'm acting for United Appeals. He's got to name a charitable agency, otherwise this shouldn't apply. Is that your point? That's probably broader than – I think Your Honor is making a broader example than I am. Counsel, Judge Gould, as I understand your position, it's that if a person makes a pitch, give me your investment dollars, and let's assume they make a fraudulent pitch. If they tell the suckers or victims, 50% of whatever this business makes is going to go to charity, but we're still going to have a good return for you, that that doesn't come within the guideline. That is, if they don't say invest in a charity, that it doesn't come within the guideline. It's not enough if they say invest in this company, which turns out to be a fraud, but say invest in this company and it's going to donate 50% of its profits to the Red Cross or the Boy Scouts or whatever. I think we run into problems when we make examples of things that may or may not fit within this guideline range. Well, what we have here actually are the facts of the case. We have the facts of the case that we have an organization that lasted for years, that made a number of sales pitches to potential investors, and on these two brief occasions, Mr. Sluder made these statements that were, in fact, not true. During the course of the trial, there was testimony with direct examination from the government of their victim witnesses that they put on, and not one of the victim witnesses said that it had ever been pitched to them as a charitable organization, not one. Counsel, Judge Gould again, I want to make sure I'm understanding your position. So now I'm understanding you're saying that the fact that it was like in two isolated pitches out of years of sales pitches means it's not enough. Let me slightly change my hypothetical. Let's assume that the exact things that Sluder said, instead of being a couple of instances, were things that were written in a telemarketing script so that everybody who called in, everyone who answered the ad to call this number, heard those words, every single victim. Would you then say that would be enough for the enhancement? Yes. Or would it not be enough? That would be enough. Okay. So does your argument hinge on the frequency of the statements? No. It hinges on, for example, what Your Honor, the example that you just posited, was something where it was institutionalized, the whole issue of, or the theme that it was charitable was institutionalized within the organization. Your Honor, I don't want to cut this short, but if I'd like to move to really what for me is the heart of this matter, and that is that the judge in imposing a 25-year sentence on a 50-year-old man who had never been in trouble before in his life was an abuse of discretion in sentencing him to a sentence that did not take into account all of the 3553A factors. The court specifically stated at the time of sentencing that he would find specifically that these are the, that protection of the public and deterrence of others for the two prevailing sections that he would rely on. Now, this is not the law. The judge ignored the 3553A factors that would have us look at the whole defendant, the whole crime, if you will, and the principle of parsimony. What is the sentence that is no greater than necessary to serve all of our purposes of sentencing? We have a man who's going to get out of custody when he's in his early 70s, and in fact he will not be able to make restitution to his victims. One last point. I think that this kind of a sentence where a person who has essentially taken money from others and where restitution is mandated by law, in this case restitution of almost $45 million was imposed, and yet, which of course is by law, but by the same token, there is no opportunity for that $45 million to be paid back to the investors. So by giving this kind of... Under that theory, he should be put out immediately and earning money. No. I think we have to have some kind of a balance between what is an appropriate punitive sentence looking at the... What you want to do is reverse and remand to the district court to consider all the factors, not just two of the factors under 3553A. Yes. And I do think there needs to be a balancing between the mandated restitution and the goal of making the victims whole and giving and sentencing to an appropriate length of time in custody. What about the factor that talks about punishment? Should that be accounted for? I mean, the guy took $40 million. Do you treat that the same way as somebody that takes $1,000? Certainly. No, no, no, certainly not. I'm not trying to make that kind of comparison. This was a serious crime. But on the other hand, Mr. Treadwell, Randy Treadwell, is not a businessman. He's not a Bernard Evers. He's not a Bernie Madoff. And in essence, by giving him what's effectively a life sentence, he's been painted with that same brush. He simply did not have that kind of sociopathology that those sorts of criminals, if you will, do. All right. Thank you very much. Thank you, Your Honor. We'll hear from the government. May it please the Court, William Cole for the United States. Your Honors, first addressing the arguments concerning Mr. Sluder and Mr. Saturday, I think it's unfair to the district court to suggest that he was not taking into account the scope of the defendant's agreement when he calculated the loss figure. First of all, this was a single object conspiracy. There was only one agreement in this conspiracy. There was only one agreement alleged in the indictment, and only one agreement proved at trial, and that was an agreement to pitch fraudulent investments, virtually almost always identical investment pitches, with slight variations of company name, perhaps, over the years, as one company cratered and the next company rose from the ashes. But there was really a single object conspiracy with a very simple scheme. It wasn't a complicated scheme. And I think it's unfair for the appellants to suggest the district court somehow disregarded the simple notion that the scope of relevant conduct is not always the same as the scope of criminal liability. The fact that the guidelines say that the scope of relevant conduct is not necessarily the same as the scope of criminal activity does not say that it won't often be. And in fact, in this case, the scope of guidelines responsibility, so to speak, for loss, was the same as the scope of the criminal responsibility, with the caveat that the district court took a careful look to make sure that he accounted for when the individuals entered into the agreement and whether they'd left the agreement. And the district court took that into account. He made specific findings that Mr. Sluder, he felt there was certainly enough evidence to show that Mr. Sluder was aware of what was going on during the space of the conspiracy. And that's quoted in the record. And that he was in the conspiracy basically from start to finish. And again, the district court sat through an almost four-week trial. There were many, many witnesses. He heard the first witness who said that she was personally pitched by Mr. Sluder in 2001. He heard the conference call that was referred to about the humanitarian feeding the poor. That was in October of 2004, about a week before the search warrants were issued in the case and the SEC stepped in. So Mr. Sluder was not just there from the beginning. He was there doing exactly what the scope of the agreement was, which was soliciting investments by fraudulent means. And in answer to the question that Judge Gould put several times, I believe there was nothing else for the district court to find than what the district court found with respect to Mr. Sluder. There was no secret side agreement. There was no different object. And Mr. Sluder is properly responsible for the entire loss. Now, the district court was intellectually honest in applying the guidelines correctly, as the district court is required to do. The district court then decided in its discretion to account for differences in culpability in other ways. The district court said, yeah, he's responsible for the loss. That's what the guidelines say. It's the correct calculation. But I will, under 3553A, make a distinction between Mr. Sluder and Mr. Crudwell. The government hasn't appealed from that distinction that was made. He didn't just give some back, as the appellant stated in earlier argument. He gave back half, essentially, to Mr. Sluder. He dropped down from the 300s, I think it was a 324-month low-end sentence, and went down to 188 months. And so I think this case is actually a case of district court who was very careful, who treated Mr. Sluder very much as an individual, and did the same for Mr. Saturday, treating him very much as an individual, finding that he was responsible only for half the loss. Do you know what difference it would have made in the guideline calculations if, under relevant conduct, he would have said it's only $20 million as opposed to holding him for the entire $40 million or whatever it was? It would have made no difference because the break point was $20 million. And so you'd have to go, and that was a point that the government also made to the district court, which was that to make any guideline difference, he had to find Mr. Sluder was responsible for taking him from $44 million down below $20 million. And as the government pointed out below, there just was no way that was going to happen. The facts were so against Mr. Sluder that he was never going to get below a $20 million break point of the responsibility. And frankly, neither was Mr. Saturday. And so the district court did cut Mr. Saturday's loss in half, but alas, it was still over the $20 million threshold under the guidelines. And so the district court again did the intellectually honest thing and found that the 22-level enhancement applied and simply used his discretion under all of the sentencing factors to account for what he saw as a distinction in the culpability levels, something the government opposed but has not appealed from. And he gave Mr. Saturday a generous departure, if you call it a departure, but anyway, a generous movement down to a 63-month sentence, accounting for the fact that he felt he was less culpable overall in the whole picture than Mr. Treadwell or Mr. Sluder. Are you going to address the constitutional challenge? Yes, Your Honor. This is an interesting issue, particularly unique for me because it doesn't, as I read it, involve an alleged error in the district court. The argument that's been made is not that the district court erred, but that this court will err if it reviews the district court for substantive reasonableness. That's a unique argument because I don't know how to address it other than to say that if this court reviews for substantive reasonableness, it will be doing what the Supreme Court has said it must do. And if it doesn't review for substantive reasonableness, then I suppose I'm in a fine position because it means that all you review for is procedural correctness. It's an interesting argument for an appellant to make, I think, because where does it leave this court? It leaves the court with a choice of ignoring the Supreme Court, and even if you were to ignore the Supreme Court, it doesn't hurt the government because it means you don't review the district court for substantive reasonableness. Justice Scalia's point was that courts of appeals should only review for procedural correctness, which might not be a bad place for the government to be in. But we are stuck, or I shouldn't say stuck. We're in a world where the Supreme Court has asked this court to review for substantive reasonableness, and I don't really know how to respond to the argument other than to say that it's been settled by the Supreme Court and by this court sitting in bonk in Cardi and the other sentencing cases that says that this panel is supposed to review for substantive reasonableness. But it's not an error. Counsel, Judge Gould with a question. Yes. So then you would say that the Supreme Court's decisions require us to review for substantive reasonableness even after the district court has made some fact determinations leading to an advisory guideline range. So if we're required to do that, then the appellant can make his argument to the Supreme Court to change their law and tell us to do something else, I guess, right? That's right. I mean, I don't think there's any allegation that either the district court or what this court will do, if it does review for substantive reasonableness, in any way departs from any Supreme Court ruling or any Ninth Circuit ruling. In fact, it will simply be doing exactly what has now been laid out in several opinions of the Supreme Court and the Ninth Circuit in saying what should happen in reviewing a sentence. And so this is really an argument. What did the Seventh Circuit counsel refer to a Seventh Circuit case that had rejected this argument? Are you familiar with that case? Unfortunately, I'm not. I did not. I don't know if that's a more recent case. I don't believe it was cited in the briefs. And when I did my research, I looked for any case that upheld an as-applied challenge. And I could not find any. But I also did not find the Seventh Circuit case. Let me see if I understand what the as-applied challenge is. And you can correct me in your rebuttal if I'm wrong. The idea being that the district court's determination of the amount of the loss was a factual determination not made by the jury and which caused the enhancement to go from a seven-month, I think one to seven months, which counsel referred to, to 188 months. Is that what you understand to be the argument of the appellant on this issue? That's what I thought it was when I responded. But in the reply brief, the appellant said that's not the argument. The argument in the reply brief said that, no, that's a Booker argument. If I understand correctly, in the reply brief, the appellant says the argument is that that's fine for the district court to do. But once your honors review the district court's determination for substantive reasonableness, you are essentially, in a way, creating a Booker problem that you are now saying that the district court can only have applied that sentence if it found certain facts. Whereas if you don't review for reasonableness, the district court can apply any sentence it wants up to the statutory maximum. And so, as I understand it, and, in fact, in the appellant's brief it says, Randy Treadwell, he distinguishes, Sluder and Saturday distinguished their argument for Mr. Treadwell's. They say on page 15 of the reply brief, Randy Treadwell argued the Sixth Amendment violation occurred when the district court calculated the guideline range. Appellants argue, appellants meaning Mr. Sluder and Mr. Saturday, argue that the Sixth Amendment error occurs on appeal under substantive reasonableness review. And so I do understand the argument. In other words, we can't consider what is substantively reasonable or not without accepting a factual finding as to the amount of the loss. No, I think it's that you cannot consider what is substantively reasonable without implicitly telling the district court that the only way for his sentence to be lawful is for him to have found certain facts, which now makes, essentially, a pre-Booker problem. It's an argument that Justice Scalia has been pushing in concurrences. It's an argument as to why Justice Scalia, as I understand it, is against reasonableness review, but it's always been in a concurrence. It's not binding. The majority of the Supreme Court has asked for reasonableness review, and this Court, sitting in Bonk and Cardee, has mandated that the Ninth Circuit follow that guidance and apply reasonableness review, but it's a very intellectual, theoretical argument that Justice Scalia has been advancing and that counsel has been advancing that hasn't gained traction. But it is an error in the district court. And I would, again, I'd say, what is the remedy, even if the appellant was correct? Well, the remedy is that we suspending ask for an end bank. No, what you say, we can't even do that because under Booker, the Supreme Court rule is already well established. Yeah, I mean, this is precedent coming down from the Supreme Court. And so, but, and where would it leave you anyways not to review for reasonableness? It would leave you with affirming the district court's sentence anyways because it's under the statutory maximum. So, but in any event. Counsel, before all your time is gone, could you please review the issue of the sentence enhancement relating to the money going to charity? Yes, Your Honor. I think the important issue here is that in the guidelines as they were amended back in the early 2000s, as pointed out in this court's opinion in the Lambert case, there was a distinction, a change made in the application notes. And it said that the individual had to act, in fact, I have it here, that in order to qualify, the individual had to be acting to gain. It's where the defendant was acting to obtain a benefit on behalf of a charitable organization. And it goes on to say, regardless of whether the defendant actually was associated with the organization. And that's in the application notes to 2B1.1. And so the government's position is that you're not required to actually represent a charitable organization. You're not required to say you're representing a charitable organization. You're required to represent that you're acting to obtain a benefit for a charitable organization. And the government's position would be that here, because they said, although they were clearly a for-profit endeavor, supposedly bringing huge profit to their investors, or promising huge profit to their investors, the government's position is that once they said that a certain portion of the proceeds from these various nonexistent investments had to be returned to humanitarian needs, they were misrepresenting that they were acting to obtain a benefit on behalf of a charitable organization. And the government believes that simply fits the language of the application notes well. It certainly was within the district court's discretion to find that met the application. And the issue of the frequency, the government disagrees with, I don't think it matters what the frequency of the misrepresentation is, but I know that the example, the chief example relied upon by the government was during one of these senior member conference calls where Mr. Treadwell and Mr. Sluder were pumping up the sales force. So the fact that they're caught at that high level of instruction to their marketers, they are essentially giving the telepump. I think he used the example of sort of a boiler room script, a telephone script. But do these people have such a script? Is there a script in evidence that was used? No, because this was not a, to our knowledge at least, this was not a scheme committed over telemarketing. This was an in-person, mouth-to-mouth, and so really I would submit the script is what Treadwell and Sluder themselves are telling the marketers. They are telling them this because they know this was a, as pointed out in the briefs, this was a scheme largely promoted through a religious church sort of affinity scheme. And there was always this underlying motif or sub-theme that God was on their side and that this was all going to help various ministries. And so to come out in that context and to tell people that non-existent investment programs require part of these massive proceeds to go to feed the poor is clearly an intent to strike at the heart of the victims who are all from these church communities. Not all, but a large number of them come from these church communities. And the government believes it's exactly the type of conduct that causes particular social harm as indicated, to use the words of the guideline notes, and that it's the sort of thing that warranted the two-level enhancement. Does the record show how many other people were involved in marketing beyond the three who are appellants here? I suppose it shows it only from the standpoint of the transcripts having, you know, I should take that back. I believe there was testimony from people who participated that sometimes these calls would have, well, I don't want to misquote the record. I'm afraid I give a number that's inaccurate. But there were certainly evidence of victims all over the country having different agents who had brought them in. I mean, the witnesses all were coming through different pipelines. And this was a nationwide endeavor. Under the guideline which you quoted, 2B1B8A, which requires for the enhancement that the person was acting, quote, to obtain a benefit on behalf of a charitable organization. Doesn't it have to be an organization? There was no mention of any organization, was there? It was charitable activities, humanitarian needs, but there wasn't any organization. Isn't targeting an organization as being a recipient of these funds necessary? I think, Your Honor, I think that's an excellent question. And I would agree there was no mention of an organization by name. There was certainly no mention of Boy Scouts or UNICEF or Red Cross. Or even that we give it to charitable organizations or a charitable organization to attend these. I mean, I'm thinking that whenever we deal with these enhancements, we're really dealing with a person's time in prison. And if there's no evidence that they represented that it was going to an organization, then perhaps the sentencing enhancement cannot be applied. I understand Your Honor's question. I think the only response I would have is twofold. First, well, it had to be going to one or two organizations. Someone was using the funds. Again, this was not just a choice. According to Sluder's comments, which were essentially affirmed by Treadwell when he thanked Sluder for making those comments, according to the comments, this was not a voluntary thing. This was, if we're going to engage in these super high-yield trading programs, we must agree that profits will go to humanitarian causes. That means that either they were agreeing that Learned Waterhouse itself was going to carry out the humanitarian work, or they were giving it to organizations that were doing so. And so although I would agree that there was no organization named. Nor described. Nor described. But it was, well, it was described that they were feeding the poor around the world. And so they weren't described enough to identify their corporate name or form. But certainly the clear implication was that the funds were required by the terms of the investment to go to someone who was feeding the poor. In other words, what you're saying is you can't feed the poor without an organization. It's got to be. I think that's right. It's certainly not around the world. And I think the implication was that there was an organization here, or perhaps multiple organizations, who were benefiting from this requirement in the terms of these investment programs. And unless there's any other questions, I thank you. Your Honors, thank you for indulging the brief rebuttal. I wasn't trying to sandbag the government in my opening brief. It sounded like it was a district court problem and then switch it to appeal. I've been arguing Justice Scalia's read of concurrence from the beginning. And the point is this. As Your Honor knows, being a district court judge, when you impose a sentence in the district court, you're not trying to impose a reasonable sentence. You're trying to impose a sentence that accords with 3553 and is parsimonious within the meaning of that word under 3553. However, it is true that the Supreme Court requires on appeal that this court review for substantive reasonableness. And we can all agree that the only facts found by the jury create a guideline range of one to seven months. That is undisputed. And comparing that computed guideline range to the sentences imposed, they look substantively unreasonable. They look like they are unconstitutional. When you change that guideline range with the judicially found facts, all of a sudden those sentences are beneath the guideline range. And the judicially found facts are the amount of loss. Yeah, that's the key one, the 22 levels. I mean, I guess Your Honors could hypothesize a situation where there was a one-level judicial found fact and it still was within whatever that parsimonious umbrella is for the sentence. But it's where the guidelines are given legal effect. That's when they make things unconstitutional. Counsel, isn't that an argument that you have to present to the Supreme Court? No. That you have to ask the Supreme Court to change their rule? I'm not asking to get rid of substantive reasonableness. I'm not. I'm not asking to get rid of substantive reasonableness. I'm saying that substantive reasonableness must be performed in compliance with the Sixth Amendment. And if you've used facts found by the district court by preponderance of the evidence, you are violating the Sixth Amendment. Are you saying that any loss that causes the enhancement here, so if you have a $40 million loss, there never can be a reasonable sentence that incarcerates somebody for 300 months? Sure, of course there can. It just needs to be done in accordance with the Sixth Amendment. Which is what? That you have to submit a verdict form to the trial jury? I'm sure Your Honor submits drug quantity findings all the time. But did you submit that kind of a verdict form here? It wasn't trial counsel. No. Was it? So isn't that contrary to Booker? Yeah. I mean, I do think you wouldn't be allowed to under Booker. I think the government would have to charge it in the indictment, and then they could say this is our presentation of the case. We want the jury to make this finding. But, yes, I agree. That would be contrary to Booker. Booker says that the guidelines assume a court is going to make that determination. But, of course, the Supreme Court has been less than faithful to what the Congress originally intended with the guidelines. Thank you for your time, Your Honors. Thank you. The case of the United States of America v. Treadwell, Smooter and Saturday is marked submitted. And that will end our calendar for today. And we stand adjourned until tomorrow at 930 a.m. Thank you very much. Okay. Thank you.
judges: Molloy, Gould, Bea